UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:95-cv-633 HTW JCS |
| | ) | |
| CHARLES ROY McMILLAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
<u>WHY DEFENDANT SHOULD NOT BE HELD IN CIVIL CONTEMPT</u>**

**I.   INTRODUCTION**

Plaintiff, the UNITED STATES OF AMERICA, respectfully moves this Honorable Court for an order requiring defendant, CHARLES ROY McMILLAN, to show cause why he should not be held in civil contempt of the Order entered by this Court on June 27, 1996.

The United States initiated this lawsuit on August 17, 1995 under the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 (1994) ("FACE"), in response to defendant's threats against physicians, staff, and patients of the Jackson Women's Health Organization ("JWHO"), and defendant's obstruction of the New Woman Medical Center ("NWMC").  After this Court issued a preliminary injunction governing defendant's activities at JWHO, the parties entered into a Consent Decree, which was entered as the judgment of this Court on June 27, 1996.  A copy of the Consent Decree is attached hereto as Exhibit G and made a part

hereof by reference.

The Consent Decree prohibits defendant from, *inter alia*, being physically located within 25 feet of JWHO's property line, and from using threats of force to interfere with or intimidate JWHO employees.  Defendant has had full knowledge of all Consent Decree requirements.  Nonetheless, defendant has violated the Consent Decree by threatening Dr. Joseph Booker, Jr., a physician employed at JWHO, and continues to violate the Consent Decree by repeatedly coming within 25 feet of the JWHO property line.

Defendant's conduct demonstrates disregard for this Court's authority and requires the Court's intervention to ensure the safety of JWHO employees and patients.  Accordingly, the United States respectfully moves this Court for an Order to Show Cause Why Defendant Should Not Be Held In Civil Contempt.  The United States seeks a finding of civil contempt and the following remedies:  1) an increase in the buffer zone around JWHO from 25 feet to 50 feet; 2) compensatory damages to Dr. Booker of $5,000 for each of three threats defendant made against Dr. Booker; and 3) an order stating that any future violation of the Consent Decree's buffer zone will bring with it a $1,000 fine, and any future violation of the Consent Decree's prohibition on threats will result in a $5,000 fine; and 4) any other equitable relief this Court deems appropriate.

## II.  STATEMENT OF FACTS

### A.  Procedural History of the Injunction

On August 17, 1995, the United States filed a Complaint against defendant for violations of FACE.  The Complaint alleged that defendant had:  (1) threatened JWHO physicians, staff, and patients; (2) attempted to solicit the destruction of JWHO; and, (3) obstructed access to NWMC.[1]

#### 1.  Preliminary Injunction

On November 22, 1995, this Court issued a Preliminary Injunction Order, finding that the United States was likely to prove at trial that the defendant had threatened individuals at JWHO on three occasions.  The Preliminary Injunction prohibited defendant and his agents from:  1) threatening JWHO employees or patients in violation of FACE; 2) damaging JWHO in violation of FACE; 3) coming within 25 feet of the JWHO property line; and 4) violating FACE anywhere.  United States v. McMillan, 946 F.Supp 1254, 1270 (S.D. Miss. 1995).  The injunction was modified on November 24, 1995, to exclude from its coverage individuals other than the defendant.

#### 2.  Consent Decree

On June 6, 1996, the parties entered into a Consent Decree, which was signed by this Court on June 25, 1996, and entered by

---

[1]     The New Women's Medical Center has since closed.

this Court on June 27, 1996.  The Consent Decree enjoins defendant from, *inter alia*, using "threats of force to interfere with or intimidate employees . . . of the JWHO," and from coming "within 25 feet of JWHO's property line."  (Ex. G, Consent Decree, ¶¶ III.A and III.C.)  The Consent Decree further enjoins defendant from violating FACE anywhere.  (Ex. G, Consent Decree, ¶ III.G.)

### 3.    1999 Contempt Finding

On March 31, 1999, this Court found the defendant to be in civil contempt of the Consent Decree as a result of the defendant's threatening statements directed at Dr. John Stopple, a physician working at NWMC.  Several times over a period of weeks, particularly when Dr. Stopple arrived at NWMC, defendant would shout, "Where's a pipebomber when you need him?"  United States v. McMillan, 53 F. Supp. 2d 895, 896 (S.D. Miss. 1999). In finding the defendant in civil contempt in 1999, this Court stated that the defendant "had employed measures to test this court and its decree in order to treat this court's lawful order as mere sham and inapplicable to what [defendant] believes he can do notwithstanding the Consent Decree."  Id. at 907.  This Court ordered the defendant to pay a fine of $1,000 "to purge himself of his contempt and assure his future compliance with the Consent Decree."  Id. at 908.

**B.   Evidence Supporting Plaintiff's Motion for an Order to Show Cause**

Defendant is once again in contempt of the Consent Decree by coming within 25 feet of the JWHO property line, and by threatening Dr. Booker.

**1.   Defandant regulary is within 25 feet of JWHO Property**

The Consent Decree plainly prohibits the defendant from coming within 25 feet of the JWHO property line.  (Ex. G, Consent Decree, ¶ III.C.)  This provision of the Consent Decree is a necessary measure designed to keep the defendant from violating FACE.  A 25-foot buffer zone around JWHO is intended to provide for the unobstructed entrance and egress of physicians, staff, and patients to JWHO.  However, defendant repeatedly comes within 25 feet of JWHO in violation of the Consent Decree.  Beginning on or about October 31, 2006, and continuing through the present, defendant has routinely violated this provision of the Consent Decree by standing very near the JWHO property line on Fondren Place, which borders JWHO to the south.  (Ex. A, Declaration of Joseph Booker, Jr., M.D.; Ex. C, Declaration of Alan Lange.)  The 25-foot buffer zone is marked on Fondren Place with white and orange paint, and numerous photographs show defendant well within the boundary.  (Ex. C, Declaration of Alan Lange; Exs. E1 - E15, Photographs.)

In addition, on October 31, 2006, JWHO's video surveillance system captured defendant enter the JWHO parking lot, which is on

JWHO property, approach an occupied car at the far end of the parking lot, and place a flyer on the car's windshield.  (Ex. D, Declaration of Sheila Butler; Ex. F, Video Recording.)

   **2.   Defendant has threatened Dr. Joseph Booker**

   The Consent Decree also prohibits defendant from using "threats of force to interfere with or intimidate employees . . . of the JWHO."  This provision is consistent with the FACE prohibition against threats of force.  18 U.S.C. § 248(a)(1). Defendant has violated this provision, and FACE, on three occasions between December 2006 and January 2007 by threatening Dr. Joseph Booker, a reproductive health care physician employed by JWHO.

   Defendant has threatened Dr. Booker by stating:

   (1)   "Your days are numbered, Booker."  (On or about
         December 5, 2006);

   (2)   "You may die today.  Are you prepared to meet your
         maker?  Repent." (On or about January 3, 2007);
         and,

   (3)   "Your judgment day is coming, Booker."  (On or about
         January 19, 2007).

(Ex. A, Declaration of Joseph Booker, Jr., M.D.; Ex. B, Declaration of Eddie Randall.)

   The defendant's threats cause Dr. Booker to fear for his life.  Recognizing that physicians providing reproductive health services have been murdered in the recent past by anti-abortion protestors and that defendant has made public statements

advocating such violence, Dr. Booker has taken the extraordinary precaution of routinely wearing a bullet-proof vest when entering or exiting JWHO.  (Ex. A, Declaration of Joseph Booker, Jr., M.D.)

### III.  ARGUMENT

The United States seeks a finding of civil contempt and other equitable remedies.  This Court has "the inherent power to enforce compliance with an injunction through civil contempt proceedings."  United States v. City of Jackson, 318 F. Supp. 2d 395, 408 (S.D. Miss. 2002).  A party bound by a court order may be held in contempt if "he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." Castillo v. Carmen County, 238 F.3d 339, 350 (5th Cir. 2001) (citing Travelhost, Inc. v. Blanford, 68 F.3d 958, 961 (5th Cir. 1995)); SEC v. First Fin. Group of Tex., Inc., 659 F.2d 660, 669 (5th Cir. 1981).  "In a civil contempt proceeding, the party seeking an order of contempt need only establish (1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order."  Lyn-Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 291 (5th Cir. 2002) (citing FDIC v. LeGrand, 43 F.3d 163, 170 (5th Cir. 1995)).

**A.  Defendant is in Contempt of the Court Order**

As discussed below, all three requirements for a finding of civil contempt have been met in this case, and this Court should issue appropriate sanctions against the defendant.

**1.  A Court Order is in effect**

The Consent Decree in the instant case has been in effect as an Order of this Court since June 27, 1996.  (Ex. G, Consent Decree.)

**2.  The Court Order prohibits certain conduct**

The Consent Decree expressly prohibits defendant from using "threats of force to interfere with or intimidate employees . . . of the JWHO", and from coming "within 25 feet of JWHO's property line."  (Ex. G, Consent Decree, ¶¶ III.A and III.C.)  The Consent Decree further enjoins defendant from violating FACE anywhere.  (Ex. G, Consent Decree, ¶ III.G.)

The terms of the Consent Decree are clear and specific; no debate can exist as to their meaning.  See United States v. West, 21 F.3d 607, 609 (5th Cir. 1994) (court order must be "sufficiently definite or specific to support a contempt citation").  The prohibition against coming within 25 feet of JWHO property is clear.  In addition, the prohibition against threatening JWHO employees is also clear, especially in light of the previous proceedings in this case.  The question of what constitutes a threat was the primary focus of this Court's three-

- 8 -

day preliminary injunction hearing in 1995, as well as the focus
of the defendant's first civil contempt proceeding in 1996, both
of which were attended by defendant.

For instance, at the conclusion of the 1995 preliminary
injunction hearing, this Court ruled that statements such as,
"You all look like four birds sitting on a wire waiting to be
shot," and words to the effect of "God is going to destroy the
clinic in 24 hours," were likely to be deemed threats at trial.
McMillan, 946 F. Supp. at 1268.  Moreover, in 1999, this Court
found defendant in contempt of the Consent Decree for his
statement, "Where's a pipebomber when you need one?"  McMillan,
53 F. Supp. 2d at 906.

Thus, defendant's threats to Dr. Booker regarding the
doctor's "days being numbered," his "judgment day coming," and
that he "may die today" (Ex. A, Declaration of Joseph Booker,
Jr., M.D.; Ex. B, Declaration of Eddie Randall) are clearly
prohibited by the Consent Decree.

**3.    The Defendant failed to comply with the Court Order**

As discussed in Section II(B), Defendant regularly violates
the Court Order by coming within 25 feet of JWHO property, and
has violated the Court Order by threatening Dr. Booker.
Photographs, videotape, and sworn declarations show that
defendant routinely stands very near the JWHO property line on
Fondren Place well within the 25-foot buffer zone.  (Ex. A,

Declaration of Joseph Booker, Jr., M.D.; Ex. C, Declaration of
Alan Lange; Ex. D, Declaration of Sheila Butler; Exs. E1 - E15,
Photographs; Ex. F, Video Recording.)

Sworn declarations from Dr. Booker and security guard Eddie
Randall also show that defendant has threatened Dr. Booker at
least three times between December 2006 and January 2007. (Ex.
A, Declaration of Joseph Booker, Jr., M.D.; Ex. B, Declaration of
Eddie Randall.)

Defendant's statements constitute threats that are
prohibited by both the Consent Decree and by FACE. Although FACE
does not specifically define threats that would be prohibited
under the statute, its legislative history contemplates that
statements would constitute threats "where it is reasonably
foreseeable that the . . . statements would be interpreted as a
serious expression of an intention to do bodily harm." S. Rep.
No. 117, 103d Cong., 1st Sess. 22-23 (1993). Additionally,
citing <u>Watts v. United States</u>, 394 U.S. 705 (1969), the Senate
Report states that a statement constitutes a "true threat" when
"a reasonable person would foresee that the statement would be
interpreted by those to whom the maker communicates it as a
serious expression of an intention to inflict bodily harm." S.
Rep. No. 117, 103d Cong., 1st Sess. 22-23 (1993); <u>see also</u>
<u>Planned Parenthood of Columbia/Willamette, Inc. v. American</u>
<u>Coalition of Life Activists</u>, 290 F.3d 1058, 1075 (9th Cir. 2002).

This Court has looked to the legislative history of FACE to conclude that:

> FACE contemplates threats of force as 'true threats' when they are meaningful and legitimately may be interpreted as serious expressions of an intention to inflict bodily harm, or when the person uttering the threat could reasonably foresee that the statement would be interpreted by those to whom it is communicated as a serious expression of an intention to inflict bodily harm.

McMillan, 53 F. Supp. 2d at 902.  Accord, Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists, 290 F.3d 1058, 1075 (9th Cir. 2002).  See also United States v. Morales, 272 F.3d 284, 287 (5th Cir. 2001)("In this circuit" a statement is a true threat if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor)(quoting United States v. Myers, 104 F.3d 76, 79 (5th Cir. 1997)).

In determining whether a statement is a "true threat" under FACE, this Court has looked to United States v. Dinwiddie, in which the Eighth Circuit listed several factors to consider.  76 F.3d 913 (8th Cir. 1996).  The non-exhaustive list of factors is:

1)  the reaction of the recipient of the threat and of other listeners;

2)  whether the threat was conditional;

3)  whether the threat was communicated directly to its victim;

4)  whether the maker of the threat had made similar

statements to the victim in the past; and

5)  whether the victim had reason to believe that the maker
of the threat had a propensity to engage in violence.
McMillan, 53 F. Supp. 2d 895, 903 (S.D. Miss. 1999)(internal
citations omitted).  See also Morales, 272 F.3d at 287 (5th Cir.
2001)(Court must examine a statement "in context" to determine
whether it is a true threat).  Once the court has considered
these and any other relevant factors, the court must then "decide
whether the recipient of the alleged threat could reasonably
conclude that it expresses 'a determination or intent to injure
presently or in the future.'"  McMillan, 53 F. Supp. 2d at 907.

Under the above analysis, this Court found that McMillan's
statement of "Where's a pipebomber when you need him?", which was
repeated several times over a period of weeks, constituted a
prohibited threat.  Id.  The statements were made directly to a
physician, who testified that he was afraid for his life because
of the statements.  Id. at 898-99.  The physician was aware that
McMillan had advocated violence in the past and had supported
using lethal force against abortion providers.  Id. at 906.

Defendant's current threats similarly are prohibited under
this analysis.  The current threats were communicated directly to
Dr. Booker, and have caused him to fear for his life.  (Ex. A,
Declaration of Joseph Booker, Jr., M.D.; Ex. B, Declaration of
Eddie Randall.)  Accordingly, Dr. Booker has taken the

extraordinary precaution of routinely wearing a bullet-proof vest
when entering or exiting JWHO.  (Ex. A, Declaration of Joseph
Booker, Jr., M.D.)

**B.    Appropriate Sanctions Should be Assessed**

In light of defendant's past threats against JWHO
physicians, staff, and patients; the Court's preliminary rulings
against the defendant with respect to JWHO; entry of the Consent
Decree in the instant case; and a civil contempt judgment against
the defendant by this Court in 1999; it is abundantly clear that
the defendant's recent violations of FACE and the Consent Decree
show blatant disregard for this Court's authority and federal
law.  The defendant cannot be trusted to honor his own
commitments.  A swift and stern response from the Court is
warranted.

This Court has the power to grant supplemental relief,
beyond that contained in the original order, "if the
circumstances . . . at the time of its issuance have changed or
new ones have arisen." United States v. City of Jackson, 318 F.
Supp. 2d 395, 409 (S.D. Miss. 2002)(quoting System Federation v.
Wright, 364 U.S. 642, 647 (1961)).  The Court should remedy
defendant's contempt by modifying the narrowly tailored buffer
zone to make defendant's continuing presence at JWHO less
threatening, despite his already-uttered threats.  This Court
should further order compensation to Dr. Booker.  Finally, the

Court should impose prospective sanctions designed to ensure
defendant's future compliance.

### 1.   Additional Injunctive Relief

This Court should increase the buffer zone around JWHO from
25 feet to 50 feet.  The Consent Decree currently prohibits the
defendant from coming within 25 feet of the JWHO property line.
The Court initially estimated that the 25-foot buffer zone would
"roughly put the defendant across the street from the clinic."
McMillan, 946 F. Supp. at 1270.  In fact, it puts defendant in
the middle of the residential street, where he can readily
approach potential clients as they attempt to turn into the
clinic parking lot, and easily approach the clinic sidewalk and
parking lot, both of which are well within the 25-foot buffer
zone.

In 1999, when the defendant first violated the Consent
Decree by threatening JWHO employees, the United States sought an
increase of defendant's restraint from 25 feet to 50 feet from
the JWHO property line.  This Court denied that request.
McMillan, 53 F. Supp. at 908.  At that time, however, the
defendant was not violating the buffer zone restrictions of the
Consent Decree.  Here, the defendant's conduct has grown bolder,
as he is not only continuing to threaten a physician providing
reproductive health services, but he is also consistently coming
within 25 feet of the JWHO property line.

- 14 -

In light of defendant's current conduct, a 50-foot buffer is now warranted.  This Court also may properly consider defendant's prior violations of the Consent Decree in crafting appropriate additional relief.  See Madsen v. Women's Health Ctr., 512 U.S. 753, 770 (1994) (noting that failure of first order to accomplish its purpose may be taken into account in evaluating appropriateness of second order imposing a 36-foot buffer around the clinic property).

Fifty feet will put the defendant a sufficient distance away from JWHO for its physicians, staff, and patients to feel more secure, yet it will preserve defendant's right to communicate his message to incoming patients as they drive to JWHO.  The 50-foot distance provision does not burden defendant's speech any more than necessary to serve a significant government interest.  See Madsen, 512 U.S. at 765; Schenck v. Pro-Choice Network of Western New York, 519 U.S. 357, 372-76 (1997) (applying Madsen standard).

This Court has authority to enter such an order.  "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." McComb v. Jacksonville Paper Co., 336 U.S. 187, 193-94 (1949).  Rule 60(b) of the Federal Rules of Civil Procedure provides the authority for a court to alter an existing order.  Fed. R. Civ. 60(b) (2007).  Here, the new circumstances created by defendant's conduct justify such action by the Court.  See Rufo v. Inmates of

- 15 -

Suffolk County Jail, 502 U.S. 367, 380 (1992) (judicial
discretion may call for the modification of a decree if the
circumstances have changed); Frazar v. Ladd, 457 F.3d 432, 438-39
(5th Cir. 2006) (holding that District Court properly applied the
Supreme Court's Rufo standard in considering movant's request to
modify a consent decree); Alberti v. Klevenhagen, 46 F.3d 1347,
1366-69 (5th Cir. 1995) (applying the Rufo standard to affirm in
part and reverse in part the District Court's modification of
consent decree in prison litigation).

   2.   **Compensation**

   In addition, the Court should impose monetary sanctions to
compensate those injured by defendant's misconduct.   United
States v. United Mine Workers of America, 330 U.S. 258, 303-04
(1947).   In the present case, as in any FACE case, compensatory
damages are difficult to quantify.   It is for this very reason
that Congress chose to allow persons aggrieved by violations of
FACE to elect statutory damages in the amount of $5,000.00 per
violation as fair compensation for their victimization by FACE
violators.   See S. Rep. No. 103-117 (1993) ("Because of the
expense and other difficulties of proving actual damages . . .
the [FACE] Act provides for statutory damages of $5,000 . . .
."). Accordingly, no showing of actual damages is required.
See 18 U.S.C. § 248(c)(1)(B).   The Court should proceed similarly
here.   Defendant threatened Dr. Booker three times, and each time

violated FACE.  Dr. Booker's compensation should be governed by
Congress' determination that $5,000 per violation is the
appropriate level of compensation.  Accordingly, defendant should
be ordered to compensate Dr. Booker in the amount of $15,000.

### 3.   Coercive Sanction

Finally, to deter defendant from violating the Consent
Decree in the future, the Court should issue a coercive order
that any future violation of the Consent Decree's buffer zone
will bring with it a $1,000 fine, and any future violation of the
Consent Decree's prohibition on threats will result in a $5,000
fine.

In 1999, as part of defendant's first civil contempt
proceedings, the United States asked for a similar coercive
sanction of $1,000 per future violation.  The Court declined to
impose such a sanction at that time, stating that "this court
shall presume that [defendant] will comply with the Consent
Decree in the future and refrain from using threats of force and
violence to intimidate employees and patients of the clinic."
McMillan, 53 F. Supp. at 908.  Clearly, the defendant's actions
since then make such a presumption inappropriate at this time.
This Court should now impose the requested coercive sanction.
Indeed, this Court has already provided defendant with the
warning:  "[I]f [defendant] engages in contumacious conduct in
contempt of this court's order and decrees in the future, this

- 17 -

court would not want to be committed to the $1,000.00 figure."
<u>Id.</u>

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests this Court to grant its Motion for an Order to Show Cause Why Defendant Charles Roy McMillan Should Not Be Held in Civil Contempt.

Respectfully submitted,

DUNN LAMPTON
United States Attorney
Southern District of Mississippi

GRACE CHUNG BECKER
Acting Assistant Attorney
 General
Civil Rights Division

SHANETTA Y. CUTLAR
Chief
Special Litigation Section

TAMMIE M. GREGG
Deputy Chief
Special Litigation Section

<u>/s/ Mitzi Dease Paige</u>
_____
MITZI DEASE PAIGE
Assistant United States Attorney
Southern District of Mississippi
188 East Capitol Street
Suite 500
Jackson, MS  39201
(601) 973-2840
(601) 965-4409 (fax)
mitzi.paige@usdoj.gov
MS Bar Number 6014

<u>/s/ Julie K. Abbate</u>
_____
JULIE K. ABBATE
WILLIAM E. NOLAN
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave., NW
Washington, DC  20530
(202) 353-9560
(202) 514-6273 (fax)
julie.abbate@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on <u>January 11</u>, 2008, I electronically

filed the foregoing Memorandum of Law with the Clerk of the Court

using the ECF system which sent notification of such filing to

the following:

Stephen M. Crampton, Esq.
LIBERTY COUNSEL
Post Office Box 11109
Lynchburg, VA  24506-1108
court@lc.org


and the following parties by U.S. Postal Service, postage pre-

paid:

Charles Roy McMillan
1004 Buckley Drive
Jackson, MS  39206

Nathan W. Kellum, Esq.
Brian Fahling, Esq.
AMERICAN FAMILY ASSOCIATION LAW CENTER
P.O. Drawer 2440
Tupelo, MS  38803-2440

Stephen M. Crampton, Esq.
LIBERTY COUNSEL
Post Office Box 11109
Lynchburg, VA  24506-1108
court@lc.org


                              /s/*Julie K. Abbate*

                              Julie K. Abbate
                              Senior Trial Attorney
                              U.S. Department of Justice
                              Civil Rights Division